UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHILIP STULL, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EMC CORPORATION, JOSÉ E. ALMEIDA, MICHAEL W. BROWN, DONALD J. CARTY, RANDOLPH L. COWEN, JAMES S. DISTASIO, JOHN R. EGAN, WILLIAM D. GREEN, EDMUND F. KELLY, JAMI MISCIK, PAUL SAGAN, LAURA J. SEN, JOSEPH M. TUCCI, DELL INC., DENALI HOLDINGS INC., and UNIVERSAL ACQUISITION CO.,<br><br>Defendants. | Case No. 1:15-cv-13692-ADB |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Philip Stull ("Plaintiff"), by and through his undersigned counsel, for his amended complaint against Defendants (defined herein), alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is a class action brought on behalf of the public stockholders of EMC Corporation ("EMC" or the "Company") against EMC and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin the vote on a proposed transaction announced on October 12, 2015 (the "Proposed Transaction"), pursuant to which EMC will be acquired by Dell Inc. ("Parent"), its wholly-owned subsidiary, Universal Acquisition Co. ("Merger Sub," and together with Parent, "Dell"), and Denali Holding Inc. ("Denali," and together with EMC, Dell, and the

Individual Defendants, "Defendants"), the entity that will be issuing stock in the Proposed Transaction and the holding company through which Parent conducts its business.

2. On October 12, 2015, the Board caused EMC to enter into an agreement and plan of merger (the "Merger Agreement") with Denali, Merger Sub, and Parent, which is effectively a buyout of the Company's shares including the Company's interest in VMware, Inc. ("VMware"), a publicly-traded company in which the Company presently holds an 81% interest.

3. Upon completion of the Proposed Transaction, stockholders of EMC will receive approximately $30.34 per share in cash and stock, a small premium to the current share price of EMC, and one that is steadily decreasing. In particular, pursuant to the Merger Agreement, EMC stockholders will receive: (i) $24.05 in cash (the "Cash Consideration"), and (ii) approximately 0.111 shares of "tracking stock" of VMware denominated as Class V common shares of Denali, for each share of EMC they own (the "Stock Consideration," and together with the Cash Consideration, the "Merger Consideration").

4. The Proposed Transaction is being effected pursuant to a materially false and misleading proxy statement (the "Proxy Statement/Prospectus"), a preliminary version of which was filed with the United States Securities and Exchange Commission (the "SEC") on December 14, 2015. By way of the Proxy Statement/Prospectus, Class members (defined herein) will be asked to approve the Merger Agreement, among other things. The Proxy Statement/Prospectus is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement/Prospectus.

5. Plaintiff seeks to enjoin the vote on of the Proposed Transaction or, alternatively,

seeks rescission of the Proposed Transaction in the event Defendants are able to consummate it.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9. Plaintiff at all times relevant hereto has been an EMC shareholder and is a resident of Englewood, Colorado. He holds approximately 28,000 shares of EMC stock.

10. Defendant EMC is a Massachusetts corporation and maintains its principal executive offices at 176 South Street, Hopkinton, MA 01748. The Company, an information technology company, focuses on enabling businesses and service providers to transform their operations. EMC's common stock is traded on the NYSE under the ticker symbol "EMC."

11. Defendant José E. Almeida ("Almeida") has served as a director of EMC since January 2015. According to the Company's website, Almeida is a member of the Leadership and Compensation Committee and the Finance Committee.

12. Defendant Michael W. Brown ("Brown") has served as a director of EMC since August 2005. According to the Company's website, Brown is a member of the Audit Committee

and Chair of the Finance Committee.

13. Defendant Donald J. Carty ("Carty") has served as a director of EMC since January 2015. According to the Company's website, Carty is a member of the Audit Committee and the Corporate Governance and Nominating Committee.

14. Defendant Randolph L. Cowen ("Cowen") has served as a director of EMC since January 2009. According to the Company's website, Cowen is Chair of the Leadership and Compensation Committee and a member of the Mergers and Acquisitions Committee.

15. Defendant James S. DiStasio ("DiStasio") has served as a director of EMC since March 2010. According to the Company's website, DiStasio is Chair of the Audit Committee and a member of the Corporate Governance and Nominating Committee.

16. Defendant John R. Egan ("Egan") has served as a director of EMC since May 1992. According to the Company's website, Egan is a member of the Finance Committee and Chair of the Mergers and Acquisitions Committee.

17. Defendant William D. Green ("Green") has served as a director of EMC since July 2013 and Lead Director since February 2015. According to the Company's website, Green is a member of the Leadership and Compensation Committee and the Mergers and Acquisitions Committee and has acted as the Lead Independent director through certain of the times relevant herein.

18. Defendant Edmund F. Kelly ("Kelly") has served as a director of EMC since August 2007. According to the Company's website, Kelly is a member of the Finance Committee.

19. Defendant Jami Miscik ("Miscik") has served as a director of EMC since August 2012. According to the Company's website, Miscik is Chair of the Corporate Governance and

Nominating Committee.

20.     Defendant Paul Sagan ("Sagan") has served as a director of EMC since December 2007. According to the Company's website, Sagan is a member of the Leadership and Compensation Committee.

21.     Defendant Laura J. Sen ("Sen") has served as a director of EMC since September 2015.

22.     Defendant Joseph M. Tucci ("Tucci") has served as a director of EMC since January 2001. According to the Company's website, Tucci has been Chief Executive Officer ("CEO") since January 2001, Chairman of the Board since January 2006, and President since February 2014. Tucci is a member of the Finance Committee and the Mergers and Acquisitions Committee.

23.     The defendants identified in paragraphs 11 through 22 above are collectively referred to herein as the "Individual Defendants." By virtue of their positions as directors and/or officers of EMC, the Individual Defendants are in a fiduciary relationship with Plaintiff and the other public stockholders of EMC.

24.     Defendant Parent is a Delaware corporation with its corporate headquarters located at 1 Dell Way, Round Rock, TX 78682. Parent is a party to the Merger Agreement.

25.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

26.     Defendant Denali is a holding company incorporated in Delaware, through which Dell conducts its business operations, and is a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action, pursuant to Federal Rule of Civil

Procedure 23, on behalf of himself and the other public stockholders of EMC (the "Class"), who are or will be damaged by a vote approving the Proposed Transaction pursuant to the materially false and misleading Proxy Statement/Prospectus. Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

28.   This action is properly maintainable as a class action.

29.   The Class is so numerous that joinder of all members is impracticable. As of June 30, 2015, there were approximately 1,924,726,357 shares of EMC common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

30.   Questions of law and fact are common to the Class, including, among others, whether the Proxy Statement/Prospectus is materially false and misleading.

31.   Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

32.   The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

33.   Defendants have acted, or refused to act, on grounds generally applicable to the

Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

34. EMC purports to be global leader in enabling businesses and service providers to transform their operations and deliver information technology as a service (ITaaS). Fundamental to this transformation is cloud computing. Through innovative products and services, EMC accelerates the journey to cloud computing, helping IT departments store, manage, protect, and analyze their most valuable asset – information – in a more agile, trusted, and cost-efficient way.

35. The Company is comprised of a federation of businesses that the Company has acquired throughout the years. Those businesses include VMware, EMC Information Infrastructure ("EMC II"), Pivotal Software, Inc. ("Pivotal"), and Virtustream Group Holdings, Inc. ("Virtustream").

36. EMC owns approximately 81% of VMware, which was acquired by EMC in 2004 for approximately $625 million. EMC wholly-owns EMC II, which was acquired by the Company in 2006. The Company owns approximately 90% of Pivotal, which was formed by EMC and VMware through a contribution of assets in 2013 and was designed to compete with Amazon. Finally, EMC wholly-owns Virtustream, which EMC acquired in July 2015.

37. EMC works with organizations around the world, in every industry, in the public and private sectors, and of every size, from startups to the Fortune Global 500. The Company's customers include global money center banks and other leading financial services firms, manufacturers, healthcare and life sciences organizations, internet service and telecommunications providers, airlines and transportation companies, educational institutions, and public sector agencies.

38. EMC's value stems from its sustained and substantial investment in research and development, a cumulative investment of $20.7 billion since 2005. To strengthen its core business and extend its market to new areas, EMC has invested $16 billion in acquisitions over the same period and has integrated more than 75 technology companies.

39. EMC is supported by thousands of technical R&D employees around the globe, consisting of the industry's broadest portfolio of systems, software, and services, which optimize its ability to create total integrated solutions and its commitment to delivering the best Total Customer Experience in this industry. In 2014, EMC customers awarded the Company its highest net promoter score ever recorded, and its service excellence was recognized by distinguished awards for Innovation in Customer Commitment and Innovation in Enabling Customer Success from the Technology Services Industry Association.

40. The Company operates R&D centers in Brazil, China, France, India, Ireland, Israel, the Netherlands, Russia, Singapore, and the U.S., and manufacturing facilities in the U.S. and Ireland. EMC holds the most stringent quality management certification from the International Organization for Standardization (ISO 9001), and its manufacturing operations hold an MRP II Class A certification.

41. EMC ranks 128 in the Fortune 500 and had reported revenues of $24.4 billion in 2014, the largest revenue year in EMC's 35-year history.

42. EMC employs approximately 70,000 people worldwide. The Company is represented by approximately 400 sales offices and scores of partners in 86 countries around the world. It has the world's largest sales and service force focused on information infrastructure, and it works closely with a global network of technology, outsourcing, systems integration, service, and distribution partners.

*The Materially Incomplete and Misleading Proxy Statement/Prospectus*

43.     On October 12, 2015, the Board caused EMC to enter into the Merger Agreement with Parent, Merger Sub, and Denali, pursuant to which stockholders of EMC will receive $24.05 in cash and approximately 0.111 shares of tracking stock of VMware denominated as Class V common shares of Denali, for each share of EMC they own.

44.     Defendants filed the Proxy Statement/Prospectus with the SEC in connection with the Proposed Transaction. As alleged below, the Proxy Statement/Prospectus omits material information that must be disclosed to EMC's stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

45.     The Proxy Statement/Prospectus omits material information with respect to the Company's financial projections and the opinions and analyses of EMC's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Evercore Group L.L.C. ("Evercore"). This omitted information, if disclosed, would significantly alter the total mix of information available to EMC's stockholders.

*The Company's Financial Projections*

46.     With respect to the Company's financial projections, the Proxy Statement/Prospectus fails to disclose: (a) unlevered free cash flows[1]; (b) GAAP revenue, gross profit, operating income, net income, and EPS; (c) a reconciliation of GAAP net income to non-GAAP unlevered free cash flows and non-GAAP EBITDA; (d) free cash flow dilution adjustment; (e) restructuring charges and acquisition and other related charges; infrequently occurring gains, losses, benefits and charges and special tax items, and which includes a benefit

---

[1] The Proxy Statement/Prospectus also should clarify that the definition of "free cash flow" disclosed by Defendants does not correspond to any measure of unlevered free cash flow (as used in the advisors' respective Discounted Cash Flow analyses).

of the U.S. research and development tax credits; (f) dividends; (g) synergies; (h) all figures for stub period consisting of the fourth quarter of 2015; and (i) all figures associated with the "2.x Case," including issuance of treasury stock.

47.     The Proxy Statement/Prospectus fails to explain the reason the GSA settlement figure was included in revenue but apparently excluded for all other metrics, especially given that it resulted from a one-time event.

48.     The Proxy Statement/Prospectus fails to explain and quantify the "impact from dilution from VMware" on net income.

*Morgan Stanley's Financial Analyses*

49.     The Proxy Statement/Prospectus fails to disclose the "adjusted July Case" and "Street Forecast" projections, as well as the extrapolations of those projections that were utilized by Morgan Stanley to perform its valuation analyses of EMC.

50.     With respect to Morgan Stanley's Regression Framework Analysis, the Proxy Statement/Prospectus fails to disclose: (a) a valuation summary detailing the calculation of fully diluted shares, as well as equity value at the unaffected price for both EMC and VMware, and at the offer for EMC; (b) the regression formula and the p-values of the independent variable (*i.e.*, revenue growth rate) for each regression; (c) the assumed growth rates that were assumed for EMC, EMC Core, and VMware, respectively; and (d) the reason Morgan Stanley mixed the dependent variables in its first regression with P/E multiples for some companies and P/FCF multiples for others.

51.     With respect to Morgan Stanley's Implied Trading Analysis, the Proxy Statement/Prospectus fails to disclose how Morgan Stanley derived ranges of pricing multiples from its regression analyses, which is material in light of the fact that a regression formula

provides a point estimate, not a range, for a given assumption (in this case, revenue growth).

52. With respect to Morgan Stanley's Discounted Future Equity Value Analysis, the Proxy Statement/Prospectus fails to disclose: (a) whether Morgan Stanley ignored dividends; (b) the assumptions underlying Morgan Stanley's estimate of EMC's cost of equity; (c) the assumptions underlying Morgan Stanley's estimate of EMC Core's cost of equity; and (d) the assumptions underlying Morgan Stanley's estimate of VMware's cost of equity.

53. With respect to Morgan Stanley's Discounted Cash Flow Analysis of EMC, the Proxy Statement/Prospectus fails to disclose: (a) the basis for the repatriation tax assumption; (b) the restructuring adjustments; (c) the definition or formula Morgan Stanley used to calculate unlevered free cash flow; (d) the implied perpetuity growth rates corresponding to the assumed terminal pricing multiples; and (e) the assumptions underlying Morgan Stanley's estimate of the WACC for EMC, EMC Core's, and VMware.

54. With respect to Morgan Stanley's Discounted Cash Flow Analysis of VMware, the Proxy fails to disclose: (a) the debt, cash, and adjustment figures for VMware; (b) the restructuring adjustments; (c) the implied perpetuity growth rates corresponding to the assumed terminal pricing multiples; and (d) the value conclusions reached by Morgan Stanley and how Morgan Stanley used this analysis in assessing the fairness of the offer.

55. Finally, the Proxy Statement/Prospectus fails to disclose whether Morgan Stanley performed a precedent transactions analysis of EMC.

*Evercore's Financial Analyses*

56. The Proxy Statement/Prospectus fails to disclose EMC's "2.x Plan." It also fails to disclose the calculation of fully diluted shares, as well as equity value at the unaffected price for both EMC and VMware, and at the offer for EMC.

57. With respect to Evercore's Trading Multiples Analysis, the Proxy Statement/Prospectus fails to disclose the observed company-by-company financial metrics examined by Evercore.

58. With respect to Evercore's Present Value of Future Stock Price Analysis, the Proxy Statement/Prospectus fails to disclose the assumptions underlying Evercore's estimate of EMC's cost of equity.

59. With respect to Evercore's Trading Multiples Analysis, the Proxy Statement/Prospectus fails to disclose: (a) how pricing multiples, and particularly TEV and price figures, were calculated for EMC Core and VMware, respectively; and (b) the indicated values that came from the TEV/EBITDA multiples.

60. With respect to Evercore's Discounted Cash Flow Analysis, the Proxy Statement/Prospectus fails to disclose: (a) the definition or formula Evercore used to calculate unlevered, after-tax free cash flow; (b) the implied perpetuity growth rates corresponding to the assumed terminal pricing multiples; (c) the assumptions underlying Evercore's estimate of EMC's WACC; and (d) the basis for Evercore's belief that the treatment of stock based compensation is more or less relevant depending on the "maturity" of the subject company.

61. With respect to Evercore's Class V Common Stock Discount Analysis, the Proxy Statement/Prospectus fails to disclose: (a) the tracking stocks (currently traded and previously traded) examined by Evercore; (b) the "certain other factors" (besides this review and Evercore's experience and professional judgment) that influenced Evercore's belief as to the discount appropriate for the Class V stock; and (c) the quantitative content of this analysis.

62. Finally, the Proxy Statement/Prospectus fails to disclose whether Evercore performed a precedent transactions analysis of EMC.

## COUNT I

### (Against the Individual Defendants and EMC for Violations of Section 14(a) of the 1934 Act and SEC Rule 14a-9 Promulgated Thereunder)

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to §14(a) of the 1934 Act, 15 U.S.C. §78n(a), provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

65.     The Individual Defendants disseminated the false and misleading Proxy Statement/Prospectus, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  EMC is liable as the issuer of these statements.

66.     The Individual Defendants prepared, reviewed, and/or disseminated the false and misleading Proxy Statement/Prospectus, which misrepresents and/or omits material facts necessary to make the statements made, in light of the circumstances under which they were made not misleading, as detailed above.

67.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement/Prospectus.

68.     The written communications made by the Individual Defendants described above constitute violations of Rule 14a-9 and Section 14(a) because such communications are

13

materially false and/or misleading and were provided in at least a negligent manner. EMC is liable as the issuer of these statements.

69. By reason of the misconduct detailed herein, the Individual Defendants and EMC are liable pursuant to Section 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

70. This misconduct will result in irreparable injury to Class members unless the vote on the Proposed Transaction is enjoined, and/or the Proxy Statement/Prospectus is modified.

## COUNT II

### (Against the Individual Defendants, Parent, Merger Sub, and Denali for Violations of Section 20(a) of the 1934 Act)

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants, Parent, Merger Sub, and Denali acted as controlling persons of EMC within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of EMC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement/Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants and Parent, Merger Sub, and Denali was provided with or had unlimited access to copies of the Proxy Statement/Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement/Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement/Prospectus.

75. Parent, Merger Sub, and Denali also had direct supervisory control over the composition of the Proxy Statement/Prospectus and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement/Prospectus.

76. By virtue of the foregoing, the Individual Defendants, Parent, Merger Sub, and Denali violated Section 20(a) of the 1934 Act.

77. As set forth above, the Individual Defendants, Parent, Merger Sub, and Denali had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction

and any vote on the Proposed Transaction;

  C. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

  E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

Dated: January 11, 2016      By his attorneys,

            **/s/ Adam M. Stewart**
            Edward F. Haber (BBO# 215620)
            Adam M. Stewart (BBO# 661090)
            SHAPIRO HABER & URMY LLP
            Seaport East
            Two Seaport Lane
            Boston, MA 02210
            (617) 439-3939
            ehaber@shulaw.com
            astewart@shulaw.com

            **THEGRANTLAWFIRM, PLLC**
            Lynda J. Grant, Esq.
            521 Fifth Avenue, 17th Floor
            New York, NY 10175
            (212) 292-4441 (*telephone*)
            (212) 292-4442 (*facsimile*)

            *Attorneys for Plaintiff Philip Stuff*

## CERTIFICATE OF SERVICE

  I hereby certify that this document was filed through the ECF system to be sent electronically to the registered participants on January 11, 2016.

            **/s/ Adam M. Stewart**
            Adam M. Stewart